IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHELLANE M. BROTHERTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:12-cv-00460-REL-SSA |
| ) | |
| CAROLYN COLVIN, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER REVERSING THE DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER CONSIDERATION

Plaintiff Shellane M. Brotherton seeks review of the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff makes five arguments about the Administrative Law Judge's (ALJ) decision including the ALJ's failure to consider all of the evidence, including third party observations and information. Because the ALJ did not consider the third-party observations, there is insufficient evidence to support her overall finding. Therefore, the decision of the Commissioner will be reversed and this case will be remanded for further consideration.

## I. BACKGROUND

On January 31, 2009, plaintiff protectively applied for disability benefits alleging that she has been disabled since December 15, 2008 (Tr. 115-20, 121-26).[1] Plaintiff's disability is due to a combination of physical and mental impairments (Tr. 186-94). Plaintiff's applications were denied on May 6, 2009 (Tr. 64-68). On June 8, 2010, a hearing was held before the ALJ (Tr. 21-61). On September 3, 2010, the ALJ found that plaintiff was not under a "disability" as

---

[1] At the June 8, 2010 hearing, plaintiff amended her alleged disability onset date to November 30, 2007 (Tr. 28-9).

defined in the Act (Tr. 6-16). On February 7, 2012, the Appeals Council denied plaintiff's request for review (Tr. 1-5). Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## II. STANDARD FOR JUDICIAL REVIEW

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.;

Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

## III. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving she is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that she is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

    Yes = not disabled.
    No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits her ability to do basic work activities?

    No = not disabled.
    Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

    Yes = disabled.
    No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

    No = not disabled.

Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

Yes = disabled.
No = not disabled.

## IV. THE RECORD

The record includes testimony from plaintiff; Michael Leavely, plaintiff's boyfriend; and Amy L. Salva, a vocational expert. In addition, documentary evidence was admitted at the June 8, 2010 hearing.

### B. *SUMMARY OF MEDICAL RECORDS*

As summarized by plaintiff, the medical record reflects diagnosis and treatment of multiple medical problems including history of repaired Tetralogy of Fallot;[2] pulmonary regurgitation and right ventricular dilation with valve replacement and implantable cardioverter defibrillator (ICD) implantation; syncopal episodes; obesity; mild obstructive sleep apnea; lumbar muscle spasms; mood/bipolar disorder; and anxiety disorder.

### C. *SUMMARY OF TESTIMONY*

During the June 8, 2010 hearing, plaintiff testified; Michael Leavely, plaintiff's boyfriend, testified at plaintiff's request; and Amy L. Salva, a vocational expert (Tr. 82), testified at the request of the ALJ.

**1. Plaintiff's Testimony**

Plaintiff testified that she was born with two holes in her heart, the holes were patched but are still leaking (Tr. 35). Plaintiff reported that, in 2007, she underwent replacement of her pneumonic valve with a bovine prosthetic valve (Tr. 35). She also said that she had a

---

[2] Tetralogy of Fallot is a congenital heart defect which is classically understood to involve four anatomical abnormalities: pulmonary stenosis, overriding aorta, ventricular septal defect (VSD), and right ventricular hypertrophy (Tr. 225-31).

4

defibrillator inserted that had since "gone off" twice, and that she had to go to the emergency room both times (Tr. 37-38). Plaintiff said she experiences episodes of passing out/syncope (Tr. 29-30), she tires very easily (Tr. 30), she naps daily for 30 to 45 minutes (Tr. 30), and she gets real dizzy (Tr. 31).

As to her other medical conditions, plaintiff testified that she is being treated for a bipolar disorder with severe symptoms including mood swings during which she becomes violent, throws things, breaks things, screams, and hits people (Tr. 32). Plaintiff stated these episodes occur about once a day (Tr. 39-40). Plaintiff testified that it takes her about 30 minutes to "cool down" from these episodes (Tr. 40).

### 2. Plaintiff's Boyfriend's Testimony

Plaintiff's boyfriend, Michael Leavely, testified at plaintiff's request. Mr. Leavely reported he has known plaintiff for 12-13 years, and that they have lived together for three years (Tr. 51). Mr. Leavely observed that, since plaintiff's heart surgery in 2007, she cannot stand for long, gets dizzy or lightheaded, and passes out (Tr. 52). Mr. Leavely related that plaintiff can "snap" and quickly become abusive (Tr. 52); and that during these episodes plaintiff has slapped him, elbowed him in the ribs, choked him, thrown cigarette packages, broken dishes, and broken a towel holder (Tr. 52-53). In addition, Mr. Leavely recounted that when he gets home, there are things that have not been done and he needs to do because plaintiff cannot perform them (e.g., doing the dishes, picking up clothes, and washing and drying the laundry (Tr. 54). Mr. Leavely also reported that he calls plaintiff frequently during the day to check on her and to make sure she is okay with their daughter (Tr. 55-56).

### 3. Vocational Expert's Testimony

Vocational expert Amy L. Salva testified at the request of the ALJ. Pursuant to the Dictionary of Occupational Titles (DOT), the expert classified plaintiffs past relevant work as

5

semi-skilled or skilled and light (Tr. 57-8).

The expert was asked to assume a younger individual with a high school education, plaintiff's past relevant work experience, and a RFC for sedentary work but need to avoid hazardous job environments such as being on ladders, ropes, and scaffolds, working at unprotected heights, or working near open water; could not operate a motor vehicle or operate any dangerous moving machinery; limited to simple, routine activities and job tasks with only occasional changes to the work environment; and limited to only occasional interaction with coworkers, i.e., primarily performing independent activities, not working as part of a team or group, and definitely not interacting with the public as she had done in the past as a fast food worker, bill collector, and customer service representative. With that assumption, the expert stated that plaintiff would not be able to return to any of her past work but could perform sedentary, unskilled jobs including circuit board assembler, optical goods assembler, and document scanner (Tr. 58-59).

The expert testified that the three sample sedentary unskilled jobs she identified could not be maintained if plaintiff fell asleep for as long as 30 minutes during the workday (Tr. 59). The expert also opined plaintiff could not do any of the sedentary, unskilled jobs if she "snapped" every time she got upset and had to "cool down" for 30 minutes (Tr. 59). The expert indicated that employers would not tolerate the violent behavior and that plaintiff would not be able to maintain competitive employment if she had to be away from work for 30 minutes to deal with her anger episodes (Tr. 59).

## V.     *FINDINGS OF THE ALJ*

ALJ Debra Bice entered her opinion on September 3, 2010. The ALJ found that plaintiff had not worked since November 30, 2007, the amended alleged disability onset date, The ALJ found that plaintiff's history of repaired Tetralogy of Fallot; pulmonary regurgitation and right ventricular dilation with valve replacement and ICD implantation; syncopal episodes; obesity;

6

mild sleep apnea; lumbar muscle spasms; mood disorder/bipolar disorder; and anxiety disorder were severe impairments. The ALJ found no impairment that met or equaled the severity requirements of a listed impairment in Appendix 1. The ALJ found that plaintiff retained the RFC to perform less than a full range of sedentary work. The ALJ found that plaintiff was unable to return to her past relevant work but could perform other jobs that exist in significant numbers in the national economy. The ALJ concluded that plaintiff was not disabled.

## *VI.*    **CONSIDERATION OF LAY EVIDENCE**

Plaintiff argues the ALJ's decision is completely silent as to the testimony from plaintiff's boyfriend and the report from plaintiff's friend.

In response, defendant argues that the ALJ did consider the testimony of plaintiff's boyfriend and arrived at exertional limitations consistent with that testimony; and although the ALJ did not mention the friend's report, one should not conclude that the ALJ failed to consider that evidence. Defendant argues the friend's statements did not need to be mentioned because they were largely consistent with the ALJ's conclusions about plaintiff's abilities (e.g., the limitation to sedentary work).

"It is the responsibility of . . . the disability hearing officer (DHO), the administrative law judge (ALJ), or the Appeals Council (AC) member to identify the pertinent evidence from medical and nonmedical reports and to make findings as to the individual's ability to perform work-related activities (RFC). . . . To arrive at an overall assessment of mental impairment, relevant, reliable, information, obtained from third party sources such as social workers, previous employers, family members, and staff members of halfway house, mental health centers, and community centers, may be valuable in assessing an individual's level of activity of daily living . . . . Descriptions and observations of the individual's restrictions by medical and other sources (including Social Security Administration representatives, such as district

7

office representatives and ALJs), in addition to those made during formal medical examinations, must also be considered in the determination of RFC." SSR 85-16.

The ALJ is obligated to consider third party information and observations. 20 C.F.R. §§ 404.1513(d)(4).

Substantial evidence on the record as a whole requires taking into consideration evidence that both supports and detracts from the ALJ's decision. Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). See Universal Camera v. NLRB, 340 U.S. 474, 488 (1951).

"Substantial evidence is less than a preponderance but is enough for a reasonable mind to find it adequate to support the Commissioner's conclusion." Craig, 212 F. 3d at 436.

The ALJ must take into account any evidence that fairly detracts from the evidence that may support his finding of fact. Cline v. Sullivan, 939 F. 2d 560, 564 (8th Cir. 1991); Delrosa v. Sullivan, 922 F.2d 480, 484 (8th Cir. 1990); Fowler v. Bowen, 866 F.2d 249, 252 (8th Cir. 1989).

Evidence from non-medical sources is to be evaluated using factors such as the nature and extent of the relationship to the plaintiff and whether the evidence is consistent with other evidence of record. SSR 06-03p.

As noted above, Mr. Leavely testified at the June 2010 hearing. He described both exertional and non-exertional limitations due to plaintiff's physical and mental impairments (Tr. 51-56). Alice F. Inch completed a *Function Report Adult-Third Party* on March 28, 2009. A friend of plaintiff, Ms. Inch had known plaintiff for three years when she completed the report, and had spent time with plaintiff every night (Tr. 166-74). Ms. Inch reported that plaintiff would pass out if she stood for more than 30 minutes; plaintiff could only lift up to 20 pounds; plaintiff could not walk extensively; plaintiff tired easily; plaintiff was easily confused; plaintiff had been prohibited from driving by her doctor for safety reasons; and plaintiff was "moody," easily distracted, and prone to cry. Ms. Inch related plaintiff's ability to lift, squat,

bend, stand, walk, kneel, remember, stair climb, follow instructions, and get along with others – all have been affected by her medical problems. Ms. Inch reported that "if something goes wrong, [plaintiff] stress[es] out big time" (Tr. 166-74).

Although the ALJ's decision is not silent as to Mr. Leavely's testimony (it notes the boyfriend's statements as to problems standing), it does not discuss Mr. Leavely's testimony about plaintiff's dizziness, lightheadedness, or syncope. More importantly, the decision did not address plaintiff's violent behavior. This is important because the vocational expert testified that employers would not tolerate such behavior and that plaintiff would not be able to maintain competitive employment if she had to be isolated for 30 minutes after an anger episode.

Although the ALJ's decision limits plaintiff to less than a full range of sedentary work, it does not address Ms. Inch's statements alleging more severe exertional limitations for plaintiff or the corroboration she provides about plaintiff's emotional problems. Again, the vocational expert testified that violent behavior and a need for a 30-minute period of isolation to deal with anger would preclude performance of the three identified jobs.

The ALJ found plaintiff's testimony about these anger episodes was not credible. Because consideration of Mr. Leavely's testimony and Ms. Inch's report support plaintiff's testimony, I am sending the case back to the ALJ to specifically consider this evidence and determine of what, if any, effect it has on her decision.

## VII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole does not support the ALJ's decision finding plaintiff not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is granted. It is further

ORDERED that the decision of the Commissioner is REVERSED and this case is REMANDED pursuant to 42 U.S.C. Section 405(g), sentence four, so the ALJ may consider the

9

weight to be given the lay sources.

                                        */s/ Robert E. Larsen*
                                        ROBERT E. LARSEN
                                        United States Magistrate Judge

January 27, 2014
Kansas City, Missouri